UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOCELYN S. YARIS,

                              Plaintiff,

              -vs-                                       14-CV-551-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

---

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (TIMOTHY HILLER, ESQ., of Counsel) Buffalo, New York, for Plaintiff

                        WILLIAM J. HOCHUL, JR., United States Attorney (DAVID L. BROWN, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated January 11, 2016 (Item 14).

Plaintiff Jocelyn S. Yaris initiated this action on July 8, 2014 pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Act (Item 1). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 7, 12). For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

**BACKGROUND**

Plaintiff was born on March 1, 1958 (Tr. 107).[1] She graduated from high school, and completed two years of post-high school education (Tr. 43, 122). She has past relevant work as a language coordinator/interpreter at the International Institute from December 1995 through October 2008 (Tr. 44-45, 122).

Plaintiff filed an application for SSDI benefits on June 16, 2011, alleging disability due to brain tumor, cervical disc disease, chronic lower back pain, sciatica, hypercholesterolemia, nasal polyps, and sleep deprivation, with an onset date of October 1, 2010 (*see* Tr. 107-08, 121). The application was denied administratively on March 6, 2012 (Tr. 65-69). Plaintiff requested a hearing, which was held on April 15, 2013 before Administrative Law Judge ("ALJ") William M. Weir (Tr. 40-57). Plaintiff appeared and testified at the hearing, and was represented by counsel.

On December 5, 2013, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 18-26). Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Title II (*see* 20 C.F.R. § 404.1520), the ALJ found that plaintiff's impairments (identified as status post meningioma[2] surgery, degenerative joint disease of the knee, and major depressive disorder), while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 7).

[2]A meningioma is a tumor that forms on membranes that cover the brain and spinal cord just inside the skull. http://www.webmd.com/cancer/brain-cancer/meningioma-causes-symptoms-treatment.

impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 20-21). The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including the objective medical evidence and plaintiff's testimony and written statements about her symptoms, and determined that plaintiff had the residual functional capacity ("RFC") to perform "less than the full range of medium work as defined in 20 CFR 404.1567(c)[3] in that the claimant cannot perform complex tasks or climb ropes, ladders, or scaffolds." (Tr. 22). Given these limitations, the ALJ found that plaintiff was unable to perform her past relevant work, but considering her age, education, work experience, and RFC, the ALJ found that plaintiff would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 25-26). Using Rules 203.22 and 203.15 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids") as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 16-17).

On May 30, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 8-13). On June 24, 2014, the Appeals Council sent plaintiff further notice that it had vacated its prior denial of review for consideration of additional information, but found that this additional information provided no basis for review of the

---

[3]"Medium work" is defined in the regulations as follows:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

ALJ's decision, with the result that the ALJ's decision became the final determination of the Commissioner (Tr. 1-7). This action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the ALJ failed to incorporate the findings of consultative examining physician Samuel Balderman, M.D., in his RFC assessment; and (2) the Appeals Council failed to give good reasons for the weight assessed to the opinion of her treating physician, Edgar Bassig, M.D. *See* Items 7-1, 13. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 12-1.

## DISCUSSION

### I.   Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); see *Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

II.     **Standards for Determining Eligibility for Disability Benefits**

To be eligible for SSDI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental

impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a). As indicated above, the regulations set forth a five step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 404.1520(c); *see also* § 404.1509 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the

national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.'" *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III. The ALJ's Disability Determination

In this case, ALJ Weir determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since the alleged onset date of

October 1, 2010 (Tr. 20). At step two, the ALJ determined that plaintiff's physical and mental impairments are "severe" as that term is defined in the regulations (*id.*).

At step three, the ALJ indicated that he considered the medical evidence regarding plaintiff's back and knee impairments, as well as the effects of plaintiff's meningioma resection, but found that none of these impairments met the criteria under section of the musculoskeletal, neurological, and mental listings (*id.*). The ALJ also found that plaintiff's mental impairment did not satisfy either the "Paragraph B" or "Paragraph C" criteria of Listing 12.04 (*Affective Disorders*)[4] (Tr. 20-21).

As indicated above, the ALJ next determined that plaintiff had the residual functional capacity for medium work, limited in range by her inability to perform complex tasks or climb ropes, ladders, or scaffolds (Tr. 22-25). In making this assessment, the ALJ discussed plaintiff's hearing testimony regarding her past work experience, activities of daily living, and the functional limitations caused by the symptoms of her impairments (Tr.

---

[4]To satisfy this criteria, the claimant must show (among other things) that his or her impairment resulted in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence or pace; or
    4. Repeated episodes of decompensation, each of extended duration[.]

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B) (Paragraph "B" criteria). A claimant can also satisfy the criteria of Listing 12.04 by presenting a medically documented history of a chronic affective disorder of at least two years' duration, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration;
    2. A residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the individual to decompensate; or
    3. Current history of one or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C) (Paragraph "C" criteria).

22). The ALJ also discussed the objective medical evidence, including the reports of neurosurgeon John G. Fahrbach, IV, M.D., who performed surgical excision of plaintiff's meningioma on November 8, 2010 (Tr. 185-87), and followed her progress throughout the relevant period (*see* Tr. 226-31, 237-38, 300-02, 314-15). The ALJ noted Dr. Fahrbach's assessment that as of October 11, 2012, plaintiff had undergone neuropsychological testing which revealed some cognitive deficits as well as significant depression. Physical examination at that time was unremarkable, but review of a recent MRI raised "the question of recurrence" of the meningioma, and Dr. Fahrbach recommended follow-up imaging (Tr. 314).

The ALJ also reviewed the medical evidence related to plaintiff's knee and back problems, including diagnostic studies and reports of physical examinations performed by Marc Fineberg, M.D., upon referral from plaintiff's primary care physician, Dr. Bassig (*see* Tr. 285-86, 317-18). On April 26, 2012, Dr. Fineberg reviewed recent x-rays and MRI reports showing "left knee patellofemoral chondromalacia"[5] (Tr. 285). He suggested low-impact aerobic exercise, and discussed other treatment options including oral pain medications, physical therapy, joint lubricant injections, and doing nothing (Tr. 285-86).

Plaintiff saw Dr. Fineberg again on August 12, 2012, complaining of pain in both knees. Upon examination and review of x-rays, Dr. Fineberg's impression was

---

[5] Chondromalacia patella is abnormal softening of the cartilage of the underside the kneecap (patella). It is a cause of pain in the front of the knee (anterior knee pain). Chondromalacia patella is one of the most common causes of chronic knee pain. Chondromalacia patella results from degeneration of cartilage due to poor alignment of the kneecap (patella) as it slides over the lower end of the thighbone (femur). This process is sometimes referred to as patellofemoral syndrome.

http://www.medicinenet.com/patellofemoral_syndrome/article.htm

patellofemoral chondromalacia of the right knee. He recommended continuing low-impact exercise, and other treatment options were once again discussed. Plaintiff indicated her preference for viscosupplementation injections, which she received in both knees on multiple occasions in August and September 2012 (*see* Tr. 287-88, 320-23). Based on his review of this evidence, the ALJ found that plaintiff "has degenerative conditions in her knees, but the resulting limitations do not preclude the ability to work (Tr. 23-24).

With regard to plaintiff's complaints of back problems, the ALJ noted a history of back surgery in 1997, and epidural injections in May and June 2002, but no evidence of significant complaints or treatment related to her back since that time (Tr. 24).

With regard to plaintiff's claims of functional limitations due to mental health issues, the ALJ reviewed the report of Thomas Ryan, Ph.D., who conducted a consultative psychiatric evaluation of plaintiff on January 5, 2012, with results "consistent with psychiatric problems which may interfere to some degree on a daily basis" (Tr. 245). The ALJ gave "great weight" to Dr. Ryan's opinion that plaintiff could follow and understand simple directions and instructions and perform simple tasks; had mild limitation in her ability to maintain attention and concentration; and "may have mild limitation" in both her ability to perform complex tasks and deal with stress (*id.*). The ALJ also gave great weight to the consultative findings of state agency review psychologist T. Andrews, indicating plaintiff's overall moderate limitations in mental residual function capacity (*see* Tr. 25, 263), and "some weight" to the opinion of Jessica Englert, Ph.D., who conducted a neuropsychological evaluation of plaintiff on October 2, 2012, reporting a pronounced level of cognitive and functional difficulties which were likely exacerbated by symptoms of depression, but indicating that with appropriate treatment for her depression, plaintiff "could

be successful within a similar, albeit slower-paced position" than her past relevant language translator job (Tr. 25, 309). The ALJ noted further that the record contained no opinion from a treating, consulting, or reviewing medical source indicating that plaintiff was physically unable to work (Tr. 25).

At steps four and five of the sequential evaluation, the ALJ found that plaintiff was unable to perform any of her past relevant work, but considering her, age, education, work experience, and RFC in conjunction with the Grids, the ALJ found that plaintiff was capable of making a successful adjustment to other jobs existing in significant numbers in the national economy, and was therefore "not disabled" within the meaning of the Act at any time during the relevant period (Tr. 25-26).

## IV.   Plaintiff's Motion: RFC

Plaintiff contends that the Commissioner's determination should be reversed because the ALJ failed to incorporate the findings of Dr. Balderman, the consultative examining physician, in assessing plaintiff's RFC. As discussed above, the ALJ determined that plaintiff had the RFC for medium work, limited in range by her inability to perform complex tasks or climb ropes, ladders, or scaffolds.

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

> The regulations further recognize that:
>
> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence ....

20 C.F.R. § 416.927(e)(2)(i). Thus, the opinions of consulting sources "may constitute substantial evidence if they are consistent with the record as a whole." *Barringer v. Commissioner of Social Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996); SSR 96–6p). This is particularly so where the consultant directly examines the applicant. *See* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *see also Smith v. Colvin*, 17 F. Supp. 3d 260, 268 69 (W.D.N.Y. 2014).

In this case, Dr. Balderman conducted an internal medicine examination of plaintiff on January 2, 2012, at the request of the Social Security Administration (*see* Tr. 239-41). Plaintiff reported constant, moderate lumbar spine pain, radiating to her left leg, with

occasional numbness and with partial pain relief from medication (Tr. 239).  According to Dr. Balderman, plaintiff appeared to be in no acute distress; gait and stance were observed to be normal; she was able to walk on heels and toes without difficulty; she did not use assistive devices, was able to rise from a chair without difficulty, and did not require assistance changing for the exam or getting on and off the examination table (Tr. 240).

Upon physical examination, plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  There was no scoliosis, kyphosis, or abnormality in the thoracic spine.  Lumbar spine showed flexion to 50 degrees, extension to 0 degrees, lateral flexion to 10 degrees in each direction, and rotary movement 10 degrees in each direction (Tr. 240).  Straight leg raise test was negative bilaterally.  Plaintiff had full range of motion of her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally.  Joints were stable and non-tender, with no redness, heat, swelling, or effusion.  Hand and finger dexterity were noted to be intact, and grip strength was assessed to be 5/5 bilaterally.  Based on these findings, Dr. Balderman opined that plaintiff would experience moderate limitations in bending, lifting, prolonged standing, and prolonged sitting due to lumbar spine disease (Tr. 241).

Defendant acknowledges that the ALJ's hearing decision contains no indication that he considered Dr. Balderman's consultative examination findings which, in the court's view, might reasonably be read in conjunction with the objective medical evidence as a whole to suggest some measure of exertional limitation of plaintiff's ability to perform medium work–*i.e.*, lifting up to 50 pounds, and frequently lifting and carrying objects weighing up to 25 pounds–beyond the limitations assessed regarding plaintiff's ability to climb ropes, ladders, or scaffolds.  Under the regulations, rulings, and case law cited above, the ALJ's

failure to discuss or even mention opinion evidence provided by an examining medical source, presented on the record and probative of plaintiff's physical residual functional capacity, must be considered as reversible error.

For these reasons, and upon review of the administrative record as a whole, the court finds that the ALJ's decision in this case was based on a misapplication of legal standards governing consideration of the findings and opinions of consultative medical sources, with the result that the Commissioner's denial of plaintiff's claim for SSDI benefits is not supported by substantial evidence. Accordingly, the matter must be remanded to the Commissioner for further consideration in accordance with the matters discussed herein. On remand, the Commissioner shall consider "[a]ny issues relating to [plaintiff's] claim …," 20 C.F.R. §§ 404.983, including but not limited to the Appeals Council's consideration of the treating source opinion of Dr. Bassig.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Item 7) is granted, the Commissioner's motion for judgment on the pleadings (Item 12) is denied, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the matters discussed above.

The Clerk of the Court is directed to enter judgment in favor of plaintiff, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:    March 2, 2016